[No. A066212. First Dist., Div. Two. Sept. 21, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE YOUNG, Defendant and Appellant.

562

## COUNSEL

Christopher G. Metzger, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

PHELAN, J.—Appellant Robert Lee Young appeals a judgment of May 25, 1994, which requires him to pay $19,507.53 in restitution to the victim of his crime, P.C. Sacchi, Inc. We conclude the trial court properly imposed this restitution requirement upon appellant, despite the fact that it was not included as part of the initial sentence, execution of which was suspended, but rather was imposed as a condition of probation which was later revoked.

BACKGROUND

On December 29, 1992, the Humboldt County District Attorney filed a complaint in Eureka Municipal Court charging appellant with two counts of a violation of Vehicle Code section 10851, subdivision (a) (auto theft). Appellant pleaded guilty to one count, involving the theft and destruction of a 1993 Chevrolet pickup from P.C. Sacchi, Inc., in exchange for a promise of a grant of probation and dismissal of the second count with a *Harvey* reservation.[1] (*People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].) On March 3, 1993, the court sentenced appellant to three years in state prison. Execution of this prison sentence was suspended, and he was placed on probation for a period of five years. One of the conditions of probation required him to pay $19,507.53 in restitution to P.C. Sacchi, Inc., interest on the unpaid balance at 10 percent per annum, and an administrative fee of $1,951. Appellant was also ordered to pay a $200 restitution fine pursuant to Government Code former section 13967, subdivision (a), which was stayed pending his successful completion of probation.[2]

On May 11, 1994, appellant was found to have violated several conditions of his probation and it was revoked. On May 25, 1994, the court ordered service of the previously imposed sentence, committing appellant to the California Department of Corrections for three years, minus credits.[3] The court made no mention of the previously stayed $200 restitution fine. The

---

[1]In December 1992, appellant entered the P.C. Sacchi car dealership and convinced a salesperson to allow him to take a truck valued at $19,507.53 for an unsupervised test drive. He took the truck to the Samoa Dunes area where it became disabled, caught fire, and was totally destroyed. He then called the dealership and told them the truck had been stolen. Shortly thereafter, defendant perpetrated the same crime on another dealership, but this vehicle was not destroyed.

[2]The applicable law in this case is that in force in May 1994, when the sentencing being appealed occurred. Government Code section 13967, and Penal Code sections 1202.4 and 1203.04, discussed below, were amended effective September 29, 1994. (Stats. 1994, ch. 1106.)

[3]The court held a further hearing on May 31, 1994, at which it clarified that three years was indeed the appropriate term because there was some confusion as to which version of the sentencing statute was applicable. It was unclear whether the original sentencing judge had intended to sentence defendant to the midterm (three years) of the statute in effect when the crime was committed, or the midterm in effect at the time of the original sentencing (two years). After reviewing the record, the court concluded that the initial sentencing had properly been set at three years, the midterm in effect when the crime was committed. This issue was recently addressed and resolved in *In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022], which held that, because the Legislature clearly expressed its intent to increase the punishment for violations of Vehicle Code section 10851, the general rule that defendants are entitled to the benefit of ameliorative amendments did not apply. The court held that the fact that the Legislature had subsequently decreased the sentences for violations of Vehicle Code section 10851 did not mean that it intended this lesser punishment to apply

court noted that appellant had not paid any of the victim restitution required of him as a condition of probation, and modified the judgment, ordering appellant to pay $19,507.53 in restitution to P.C. Sacchi, Inc., pursuant to Government Code former section 13967, subdivision (c). The abstract of judgment indicates that the appellant was sentenced pursuant to Penal Code section 1170, subdivision (d), which allows modification of judgment in some cases, as discussed below. Appellant filed a timely notice of appeal.

DISCUSSION

A.  *Appellant's Contentions*

The question presented by this case is whether a trial court has jurisdiction after revoking probation to modify a judgment to add an order of direct victim restitution where victim restitution was not a part of the initial suspended sentence, but rather was a condition of probation. Appellant contends that by modifying his sentence the court violated rule 435(b)(2), California Rules of Court, and also increased his punishment in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Additionally, he asserts that, under the former version of Penal Code section 1202.4, subdivision (c), upon revocation of his probation the court could only order service of the previously imposed sentence and vacate the stay on the $200 restitution fine—nothing more.[4]

B.  *Restitution—Constitutional and Legislative Intent*

Before addressing appellant's contentions, we first review the concept of restitution and its constitutional and statutory bases.[5] It is important to distinguish between the two types of restitution involved in this case. First is the restitution fine, mandated by Government Code former section 13967, subdivision (a), and which is paid into the state restitution fund. The second is victim restitution, to be paid by the defendant directly to the victim of the crime.

---

to those who had committed crimes while the greater penalties were in effect. (*In re Pedro T., supra,* 8 Cal.4th at p. 1046.)

[4]Former subdivision (c) of Penal Code section 1202.4, (now subdivision (n)), provided that restitution fines shall be stayed when "the defendant is ordered to pay restitution as a condition of probation," and that such a stay should be lifted "upon revocation of probation and imposition of sentence."

[5]Respondent contends that because appellant did not properly object to the restitution order, he waived the issue and cannot now bring it up on appeal. However, we believe this issue involves the jurisdiction of the court to sentence defendant and is properly raised on appeal regardless of the lack of previous objections. (*People* v. *Karaman* (1992) 4 Cal.4th 335, 344 [14 Cal.Rptr.2d 801, 842 P.2d 100]; *People* v. *Neal* (1993) 19 Cal.App.4th 1114, 1120 [24 Cal.Rptr.2d 129].)

█ Victim restitution is required by the California Constitution and by statute. In 1982, Proposition 8 was passed which added article I, section 28 to the California Constitution. Subdivision (b) of this section provides, "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution *from the persons convicted of the crimes* for losses they suffer. [¶] Restitution shall be ordered from the convicted persons *in every case*, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Italics added.) This provision goes on to mandate that the Legislature "adopt provisions to implement this section," which was done in various provisions of the Penal and Government Codes. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1073 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) The former version of Penal Code section 1202.4, subdivision (a), provided that "[i]n any case in which a defendant is convicted of a felony, the court shall order the defendant to pay a restitution fine as provided in subdivision (a) of section 13967 of the Government Code." Former section 13967, subdivision (a), required defendants to "pay restitution to the victim in accordance with subdivision (c)." Subdivision (c) provided that where "the defendant is *denied probation*, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim." (Italics added.) Thus, in cases where there is a victim, the court must order victim restitution when probation is denied.

Furthermore, the former version of Penal Code section 1203.04, subdivision (a), provided that "[i]n every case where a person is convicted of a crime and is *granted probation*, the court shall require, as a condition of probation, that the person make restitution as follows: [¶] (1) To the victim, if the crime involved a victim . . . ." (Italics added.) Thus, the court is statutorily required to order a convicted defendant to pay restitution to the victim both when probation is denied, and when probation is granted.

The statutory scheme does not directly address the imposition of a victim restitution order *after* probation has been revoked. If appellant's argument is accepted, we must declare that victim restitution cannot be ordered when probation is revoked in those instances where the suspended sentence does not include an order of victim restitution. We decline to do so.

The unmistakably clear purpose of article I, section 28, subdivision (b) of the California Constitution was to require convicted persons to pay restitution to the victims of their crimes "in every case." As noted, the Legislature sought to implement this mandate by enacting Government Code former section 13967 and Penal Code former section 1203.04, among others. █

Statutes must be interpreted in such a way as to carry out the intent of the Legislature. In cases where a literal construction of a statute would lead to " ' " " 'absurd consequences which the Legislature did not intend' " ' " (*People* v. *Broussard, supra,* 5 Cal.4th at p. 1071; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]), the intent behind the statute will prevail over the literal construction (*People* v. *Broussard, supra,* at p. 1071). We believe it would be absurd to interpret the statutes involved here as requiring victim restitution when probation is granted and when probation is denied, but not when probation is *revoked.* This would allow a defendant to accept probation and violate it the next day to avoid payment of substantial restitution to the victim of his or her crime.

We note that former subdivision (c) (now subdivision (n)) of Penal Code section 1202.4, provided: "Nothing in this section authorizes the stay of an order of restitution to the victim." Arguably, this sentence can be read to mean that an order of direct victim restitution made in conjunction with a state prison sentence, the execution of which is suspended in favor of a grant of probation, cannot also be "suspended" because to do so would be tantamount to granting a prohibited "stay." When, however, the trial court also orders direct victim restitution as a condition of probation after suspending the execution of a prison sentence, we are confident the Legislature did not intend to prohibit a "stay" of the restitution ingredient of the suspended prison sentence. Rather, we believe the restriction on staying direct victim restitution simply means that such restitution may not be stayed during the time a defendant is on active probation. Thus, we conclude there is nothing in either the former (subdivision (c)) or present (subdivision (n)) version of section 1202.4, which prohibits a trial court from imposing direct victim restitution as a part of a suspended prison sentence in those cases where the restitution is also made a condition of probation.

However, if a trial court does not include direct victim restitution as a part of a suspended prison sentence, we hold it still may do so upon revocation of probation. If courts were prohibited from imposing victim restitution when probation is revoked, an entire category of cases would slip through the restitution cracks. In all cases where a prison sentence was imposed and execution suspended in favor of probation, which was later violated and revoked, the victim would not receive the constitutionally mandated restitution from the defendant. Such an interpretation would run contrary to the intent of the people expressed in article I, section 28, subdivision (b) of the California Constitution, which created a victim's right to receive restitution from the criminals who harmed the victim. (*People* v. *Broussard, supra,* 5

Cal.4th at p.1071.) It would also run contrary to the intent of the Legislature as expressed in the enactments that implement that section.[6]

Thus, in order to further the clear legislative intent, we must interpret these enactments to mean that direct restitution to the victim shall be imposed in all cases, unless "compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b); see also Gov. Code, former § 13967, subd. (c) ["clear and compelling reasons"] and Pen. Code, § 1203.04 ["compelling and extraordinary reasons"].) Trial courts must therefore be allowed to impose restitution upon revocation of probation, regardless of whether the imposition or the execution of the sentence has been suspended. (Pen. Code, former § 1202.4, subd. (c).)

In this case, the trial court ordered victim restitution after revoking probation pursuant to Government Code former section 13967, subdivision (c), which required victim restitution when probation was *denied*. To assure logical consistency, and further the intent of the initiative and the Legislature, this section must be construed to apply to cases where probation is revoked, as well as cases where probation is denied in the first instance. Accordingly, the trial court was correct in concluding that it was required to order victim restitution under former section 13967, subdivision (c).

### C.  *Restitution as Punishment*

■  Appellant contends, however, that allowing the trial court to order victim restitution after already having imposed the sentence constitutes an increase in punishment prohibited by a long-standing common law rule and the Fifth Amendment to the Constitution. This was an issue discussed by the Supreme Court in *People* v. *Karaman, supra,* 4 Cal.4th at page 335. In *Karaman,* the defendant was sentenced, but the execution of the sentence was stayed for one week so that he could put his personal affairs in order. (*Id.* at p. 341.) One week later the court held a further hearing and reduced the defendant's sentence. The district attorney appealed. (*Id.* at pp. 341-342.) On review, the *Karaman* court noted that ". . . a valid sentence may not be *increased* after formal entry in the minutes." (*Karaman, supra,* at p. 350, italics in original.) However, recognizing that entry into the minutes is an arbitrary point at which to preclude increases in punishment, the court declined to expand this rule to prohibit the mitigation of a sentence after its

---

[6]The recent amendments to the relevant codes further reinforce this interpretation of the Legislature's intent. Penal Code sections 1202.4 and 1203.04 begin by stating, "It is the intent of the Legislature that a victim of crime who incurs any economic loss as the result of the commission of a crime shall receive restitution *directly from any defendant* convicted of that crime." (Italics added; see fn. 2, *ante.*) Although these amended statutes were not in force during the relevant time period, they are nonetheless instructive.

entry into the minutes. (*Ibid.*)[7] The court pointed out that Penal Code section 1170, subdivision (d), provides that where the sentence is to a term in prison, a trial court may modify its sentence within 120 days of the commencement of execution, " 'provided the new sentence . . . is no greater than the initial sentence.' " (*Karaman, supra,* at p. 351.)[8] To increase punishment after execution has commenced would "subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution." (*Karaman, supra,* at p. 349; *People* v. *Thomas* (1959) 52 Cal.2d 521, 531 [342 P.2d 889].)[9] Execution of a sentence begins when the trial court relinquishes custody of the defendant, " 'by committing and delivering the defendant to the prison authority.' " (*Karaman, supra,* at p. 345.) Accordingly, if the addition of the victim restitution order in this case is an *increase* in punishment, it is invalid.

While restitution orders are considered a form of punishment in some cases, we conclude victim restitution does not constitute an increase in punishment where it was a condition of probation and is continued as part of a sentence following revocation of probation and without any increase in amount. Appellant relies on *People* v. *Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861], in support of his claim that restitution constitutes punishment. In *Walker* the court stated that "[a]lthough the purpose of a restitution fine is not punitive, . . . its consequences to the defendant are *severe enough* that it qualifies as punishment for [the] purpose" of plea negotiations. (*Id.* at p. 1024, italics added.) The *Walker* analysis was also applied by the Sixth District in *People* v. *Zito* (1992) 8 Cal.App.4th 736 [10 Cal.Rptr.2d 491], where a restitution order was declared punishment for ex post facto purposes. The court observed: "Although

---

[7]A recent Fourth District case, *People* v. *Colado* (1995) 32 Cal.App.4th 260 [38 Cal.Rptr.2d 57], interpreted *Karaman* to mean that a court loses jurisdiction to modify a valid sentence as soon as the sentence is entered into the minutes. While *Colado* recognizes that *Karaman* departs from this principle, it explains away *Karaman*'s direct rejection of the minute entry rule in all cases where the modification of punishment is not an increase by limiting its holding to situations dealing with "the mechanics of a short stay of execution." (*People* v. *Colado, supra,* 32 Cal.App.4th at p. 263.) *Karaman,* the *Colado* court holds, does not apply to cases where execution of a sentence has been stayed pending successful completion of probation. While we disagree with this interpretation of *Karaman,* it is not necessary to do so in order to support our holding. The present case is unique in that it concerns victim restitution, and thus is not about a modification of a sentence in the strict sense. Thus, even if *Karaman* can be read to endorse the minute entry rule in all cases, which it does not, this does not foreclose our ruling here.

[8]Section 1170, subdivision (d), applies only when a defendant "has been committed to the custody of the Director of Corrections." Since the modification in this case was before appellant was even remanded, it has no application to this case. (Cf. *People* v. *Superior Court (Cornelius)* (1995) 31 Cal.App.4th 343, 347-348 [37 Cal.Rptr.2d 156].)

[9]This rule is also articulated in the California Rules of Court, rule 435(b)(2), which states, "[i]f the execution of sentence was previously suspended, the judge shall order that the judgment previously pronounced be in full force and effect . . . ."

*Walker* considered this issue in a different context—with respect to violation of plea bargains—we believe the same analysis applies here. Just as a plea bargain violation may have a *severe impact* upon a defendant, imposition of a restitution fine may also have a *serious effect*. Indeed, this case is an apt example. If pre-1990 law applies, restitution is limited to $10,000. If post-1990 law applies, appellant may be required to pay the 'amount of the losses, as determined' which in this case is $300,000—a far greater amount. [¶] Having decided that restitution constitutes *punishment for these purposes*, it follows that the ex post facto prohibition applies and therefore restitution may not exceed a total of $10,000 as to the pre-1990 losses." (*Id.* at p. 741, italics added.) However, neither *Zito* nor *Walker* holds that restitution whether to the victim or as a fine, is always and invariably a form of punishment. To the contrary, restitution has traditionally been considered to be nonpunitive. (See *People* v. *Richards* (1976) 17 Cal.3d 614, 619-622 [131 Cal.Rptr. 537, 552 P.2d 97], disapproved in part on other grounds in *People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1126 [43 Cal.Rptr.2d 681, 899 P.2d 67].) It becomes operative as a form of punishment only where, in a specific procedural context, its imposition produces severe consequences or a serious effect. That is not this case.

Appellant suffers no greater sanction or penalty because of the simple fact that the victim restitution order is deleted as a condition of probation, but added as part of his previously suspended sentence. Had there been no order for victim restitution under the original probation grant or had the amount of restitution been significantly increased after revocation, the situation would be different. But that, as we have said, is not this case.

### DISPOSITION

The judgment and order directing payment of restitution to P.C. Sacchi, Inc., is affirmed.

Kline, P. J., and Haerle, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 1995.