Filed 11/18/14  P. v. Collins CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254940 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA048893) |
| v. | |
| BARBARA COLLINS et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Thomas R. White, Judge.  Affirmed.

James C. Huber, under appointment by the Court of Appeal, for Defendant and Appellant Barbara Collins.

William Hassler, under appointment by the Court of Appeal, for Defendant and Appellant Aundreal L. Collins.

No appearance for Plaintiff and Respondent.

Defendants and appellants, Barbara Collins (Barbara) and Aundreal L. Collins (Aundreal),[1] appeal from the judgments entered following revocation of probation previously granted after their pleas of no contest to perjury (Pen. Code, § 118, subd. (a)). The trial court imposed previously suspended sentences of four years in prison as to each appellant and ordered each appellant to pay the victim, the Los Angeles County Housing Authority (Housing Authority), $58, 960 "joint[ly] and several[ly] with the co-[appellant]." We affirm.

## FACTUAL[2] AND PROCEDURAL BACKGROUND

Gary Brody is a fraud investigator for the City of Palmdale who works on cases involving the Housing Authority. Brody had performed an investigation regarding property at 2315 Plumeria Lane in Palmdale which involved Barbara Collins, the "voucher holder" or original applicant for "section 8" assistance, and her daughter, Aundreal. Both women and their families lived at the home on Plumeria Lane and were able to do so by receiving housing subsidy money. Each year, from 2006 to 2010, Barbara and Aundreal had filled out applications for such assistance and had signed them "under penalty of perjury."

On each application for assistance, all family members who were going to live at the residence were asked "to list their entire criminal history." When asked "if anybody in the family had ever been arrested and charged or convicted for any criminal activity," both Barbara and Aundreal had "checked the 'No' box[es]." However, during his investigation Brody discovered Barbara was on probation and "had four [felony] convictions [for at least some of which she] had served time in state prison while on a section 8 program." Aundreal was also on probation and had "three convictions" for which she had served time in county jail. Brody then noted that from December 2006 to

---

[1]    We at times refer to the parties by their first names not out of any disrespect but to avoid confusion.

[2]    The underlying facts have been taken from the transcript of the preliminary hearing.

2

May 31, 2010, the Housing Authority had paid $74,442 in rent on behalf of Barbara and Aundreal and their families.[3]

On April 5, 2010, Brody went to the Plumeria Lane house and showed Barbara a Housing Authority packet from January 2008. Barbara "reaffirmed that everything in the family application packet was true and complete" and signed an affidavit so stating. "[S]he verified that the signatures were hers and those of her children," and "then she re-signed and re-dated [the] form . . . ."[4]

Packets similar to those signed by Barbara and Aundreal in 2010, which included the clause they had signed under penalty of perjury, had been signed and submitted to the Housing Authority on December 23, 2006, January 30, 2008, March 19, 2009 and August 24, 2009.

In 2010, Los Angeles County Deputy Sheriff Paul Murphy was assigned to the Palmdale Sheriff's Station. Murphy, who recognized both Barbara and her daughter, Aundreal, believed they and their families lived at 2315 Plumeria Lane in Palmdale and were able to do so because they received subsidies from the Housing Authority. On April 8, 2010, the deputy went to the Plumeria Lane residence. Both Barbara and Aundreal were at home and Murphy spoke with Barbara. When the deputy asked Barbara why she had not notified the Housing Authority of her criminal history, she "didn't really answer." Although she did not specifically mention "section 8," Barbara admitted "she didn't admit her criminal background on the Housing Authority

---

[3]     Barbara Collins had actually begun receiving benefits in August of 2001.

[4]     The form signed by Barbara Collins and dated April 5, 2010 stated: "I, Barbara Collins, residing at 2315 Plumeria Lane, Palmdale, certif[y] through my signature, that the statement given below is true and correct to the best of my knowledge and belief. [¶] . . . [¶] The signatures are mine and [those of my] family. The information that I provided is true [and] the new reexam packet will have school info determined as well. My daughter wasn't present today, April 5, 2010. She went out to pay the gas bill. My son, Torris, is at his school rehearsal. Wasn't here to verify signatures." It then states, according to Brody, "Any person who signs this statement—and it goes on to describe again perjury."

3

documents[.]" When Murphy then asked Aundreal whether she remembered signing Housing Authority documents, Aundreal stated she did and she and her mother, Barbara, had gone "through the documents thoroughly . . . before signing them."

Following the preliminary hearing, counsel for Barbara moved for a judgment of acquittal pursuant to Penal Code section 1118 based on the fact there was no affirmative evidence Barbara's intent when she signed the forms was to commit a fraud on the Housing Authority and that such a suggestion was purely speculative. The trial court indicated it was "speculative" to conclude either defendant would have received aid from the Housing Authority had the Housing Authority known of their criminal histories and there was sufficient circumstantial evidence to "support the knowledge requirement and to hold [both of] them to answer."[5]

Aundreal's counsel asserted, with regard to count 1, there had been no showing as to how much her presence at the house had been worth and she could not be held responsible for any financial loss on the part of the Housing Authority. Any contract was between the "voucher holder," Barbara Collins, and the Housing Authority and did not involve Aundreal. Under these circumstances, Aundreal could not be charged, even as an accessory or an aider and abettor. The trial court, however, determined, based on the relationship between Barbara and Aundreal as well as the living arrangements at the house, there was sufficient probable cause to hold Aundreal to answer to the proposed charges.

In an information filed June 7, 2010, both Barbara Collins and Aundreal L. Collins were charged with one count of grand theft (Pen. Code, § 487, subd. (a)), where the loss exceeded $50,000 (Pen. Code, § 12022.6, subd. (a)(1)). As to Aundreal, it was further alleged she previously had suffered a felony conviction pursuant to the Three Strikes law

---

[5] The People introduced into evidence as one of their exhibits, records which showed Barbara Collins had suffered a conviction in case No. MA025873 on February 11, 2003. As exhibit 2, they introduced a "rap sheet" which indicated Aundreal L. Collins had been convicted of Penal Code section 211, robbery, in case No. MA024394.

4

(Pen. Code, § 1170.12, subds. (a)-(d)) (count 1). Barbara was then charged with four counts of perjury by declaration (Pen. Code, § 118, subd. (a)) (counts 2, 3, 4, and 8) and Aundreal was charged with four counts of perjury by declaration (Pen. Code, § 118, subd. (a)) (counts 5, 6, 7 and 9). With regard to Aundreal, as to three of the counts alleging perjury, counts 5, 6 and 7, it was further alleged she had suffered a prior conviction pursuant to the Three Strikes law (Pen. Code, § 1170.12, subds. (a)-(d)).

At proceedings held on October 22, 2010, the trial court indicated it appeared that a resolution had been reached with regard to the "main felony case," or the matter involving perjury and grand theft, and a potential "global disposition" might have been reached as to all matters.[6] The prosecutor had agreed to prepare a "formalize[d] statement of disposition" which would be considered at a hearing to be held on December 2, 2010. In the meantime, both Barbara and Aundreal were to obtain employment and perform 16 hours of "structured community service" through the Probation Department.

On December 2, 2010, the trial court indicated each of the defendants, Barbara and Aundreal, would be pleading no contest to perjury in violation of Penal Code section 118, subdivision (a). In exchange, each of the defendants would be sentenced to four years in state prison, the sentence would be suspended and they would each spend five years on formal felony probation. The district attorney then explained the terms of probation. Both Barbara Collins and Aundreal L. Collins were to maintain full time employment and each was to pay $500 every month toward the $60,000 owed in restitution to the Department of Housing and Urban Development of the State of California. If, for any one month, a defendant was unable to pay her restitution, that defendant would be required to "do ten days of structured community service." If, for any reason, a defendant was unable to comply with the requirement she pay $500 or perform the

---

[6] In addition to the matter involving perjury (MA048893), Barbara Collins had an "open misdemeanor" (OAV02996) and Aundreal L. Collins was facing a potential felony charge (MA043296) and a "potential violation citation[] and misdemeanors" (W326241, R041967).

requisite community service, the defendant "would be in violation of . . . probation, and . . . would have to come to court before the end of the month and notify the court of [the] circumstance." In addition, every six months, the Probation Department would conduct progress reports with regard to Barbara and Aundreal.

After both Barbara and Aundreal indicated they understood the conditions of their probation, the trial court informed them, by entering a plea they were each waiving their right to a jury trial, to confront and cross-examine the witnesses against them and their right to put on a defense. Both Barbara and Aundreal indicated they understood the rights being waived and, if either one of them were to violate the conditions of her probation, that defendant would be sentenced to state prison for four years. Both Barbara and Aundreal then stated they wished to enter pleas in the matter. Barbara pled no contest to perjury, a violation of Penal Code section 118, subdivision (a), a felony. Aundreal then entered a plea of no contest to "the same charge."

The trial court determined the pleas had been knowingly, understandingly, intelligently and voluntarily made and there existed a factual basis for the pleas. It then sentenced both Barbara and Aundreal to the upper term of four years in prison, suspended execution of the sentences and placed both defendants on five years formal felony probation under the terms and conditions previously indicated. Finally, the trial court dismissed the misdemeanor pending against Barbara and, with regard to Aundreal, reinstated the felony charge but dismissed the currently pending citations and misdemeanors.

On February 6, 2014, a hearing was held with regard to the probationary status of both Barbara and Aundreal. Following a conference in chambers held with the defendants' probation officers, the trial court indicated it appeared there had been violations of the terms of probation on the part of both Barbara and Aundreal. Both women had presented "community service signoffs" from an organization neither approved of nor considered acceptable by the Probation Adult Alternative Work Service or Caltrans. In addition, there appeared negative comments in reports regarding each of the defendants and attachments to those reports indicating both defendants had failed to

6

make payments to the state as ordered. The attachments indicated payments made by check had been returned for insufficient funds. As both defendants wished to have a full hearing on the matter before sentencing, the trial court remanded them to custody and set the matter for a hearing to be held on March 7, 2014.

At the March 7, 2014 proceedings the prosecutor indicated his case against Barbara and Aundreal would be based on the court files and probation reports, both of which indicated both Barbara and Aundreal had failed to comply with the conditions of their probation.

In her defense, Aundreal's counsel indicated, although Aundreal understood she was performing "community service" at an unauthorized location, she had continued to go there, even after the trial court had advised her not to, because it was the only place she could perform such service within her schedule. As to Barbara, Probation Officer Andrew Chao testified that, although in his last report he recommended Barbara be found in violation of the terms of her probation, he had not recommended that she be sentenced to state prison. Barbara then testified she had performed community service at the same unauthorized location as Aundreal. Although, like Aundreal, the court had told her the institution was not authorized and she should not continue to go there, she had done so for the same reason, it was the only place which fit into her schedule. She had not, however, gone to the court or her probation officer and informed them it was not possible for her to follow the court's order or asked if she could comply with the court's order in some other way. In addition, although she had written some checks to the state which had been returned for insufficient funds at the time she had written the checks she believed they would be covered.

Aundreal also testified she, even after the trial court had advised her not to do so, had performed "community service" at an unauthorized organization. She, too, had gone to the organization, which was not condoned by the Probation Department, because it "fit [her] schedule." Aundreal had not informed her probation officer or the trial court she was unable to comply with the court's order due to scheduling or requested a

7

modification of the order which would have made it possible for her to both work and perform her community service.

The trial court commented that, at the hearing where the court pronounced the sentence, it had also indicated to the defendants "that if there was any problem . . . they should respond." Apparently, neither Barbara nor Aundreal replied. The trial court then noted that, at the same proceedings, the district attorney had addressed Barbara and Aundreal and stated: " 'As the court said, if for any reason you lose [your] job, you are physically injured [or] you are not capable of complying with [the conditions of your probation], you would be in violation of . . . probation, and you would have to come to court before the end of the month or notify the court of [the] circumstance.' " Finally, the trial court indicated that, at a proceeding held on March 21, 2012, it had informed the defendants and their counsel that "the agreement was that each defendant was to pay a minimum of $500 per month toward [the] victims['] restitution" and "[i]f for any reason they were unable to do that, they were to immediately notify the court, so that other arrangements could potentially be made." Again, apparently neither defendant notified the trial court that they could not comply with the conditions of probation. At the same proceeding, the trial court informed Barbara and Aundreal that "any noncompliance from the date of March 21st, 2012, could be the basis of a potential violation."

On March 7, 2014, the trial court gave a short summary of both Barbara and Aundreal's failures to comply with the conditions of their probation and their decisions not to inform the court they were unable to meet those conditions. The trial court then commented: "I don't know what else the court or the district attorney's office, or for that matter, probation could have done in this case. It does appear to me by a preponderance of the evidence that the defendants have violated their probation, and based on that finding, I am prepared to go forward with the sentencing. [¶] There has already been, as you know, sentence imposed . . . ." After each defendant's counsel waived arraignment for judgment and sentence, the court stated: "As to each of the defendants, Barbara Collins, [as to count 2,] Aundreal [L.] Collins, as to count 5, [both counts for section] 118[, subdivision] (a) of the Penal Code, a felony commonly referred to as perjury by

declaration, and pursuant to the sentence that was suspended by [the trial court] on December 2nd, 2010, probation is denied. [¶] Both defendants are sentenced to the upper term of four years [in] state prison."

The trial court awarded Aundreal L. Collins presentence custody credit for a total of 355 days and Barbara Collins credit for a total of 120 days. The court then ordered each defendant to pay a $200 restitution fine (Pen. Code, § 1202.4, subd. (b)), a $200 probation revocation restitution fine (Pen. Code, § 1202.44), a $40 court security assessment (Pen. Code, §1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373) and a stayed $200 parole revocation restitution fine (Pen. Code, § 1202.45). In addition, both defendants were ordered to pay the victim, the Housing Authority, $58,960 "joint[ly] and several[ly] with the co-defendant."

On March 12, 2014, both Barbara Collins and Aundreal L. Collins filed timely notices of appeal.

## CONTENTIONS

After examination of the record, counsel for each appellant filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed August 19, 2014, the clerk of this court advised both Barbara and Aundreal to submit within 30 days any contentions, grounds of appeal or arguments they wished this court to consider. However, prior to that time, on August 4, 2014, Barbara and Aundreal had filed a joint supplemental letter brief in which they asserted they had paid the appropriate amount of rent at each house they had occupied and believed the investigation in this matter had been racially motivated. Barbara and Aundreal also indicated that, in 2008, they had stopped accepting "section 8" assistance because if they had continued to receive it, the police "would [have been constantly] coming in[to] [their] home and that was to[o] much for [them.]." Finally, Barbara and Aundreal asserted the allegation they owed the Housing Authority $60,000 was a mistake. They had always paid their rent and the case against them should have been dismissed.

Initially, Barbara and Aundreal misstate the facts. According to the record, they received assistance from the Housing Authority through at least April of 2010. In addition, nothing in the record indicates the investigation of Barbara and Aundreal was racially motivated. There is no independent, objective evidence in support of such an assertion. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938, 945.) Finally, whether Barbara and Aundreal paid their rent was not the issue in this matter. The case involved the assertion that each woman had committed perjury when filling out their applications for assistance and, in then accepting the assistance, had defrauded the Housing Authority of approximately $60,000.

The record indicates that on December 2, 2010, both Barbara and Aundreal, after being properly advised of the crime to which they were pleading and the consequences of entering such pleas, pled no contest to perjury and agreed to, as a condition of probation, pay $500 each month in restitution toward the $60,000 owed to the Housing Authority. After entering such pleas, Barbara and Aundreal cannot now claim entry of their pleas was simply a mistake. (See *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1418; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1457.) Moreover, when on March 7, 2014, it was determined both women had violated the terms of their probation, the trial court properly sentenced them to the previously imposed, but suspended, four-year prison terms and ordered them to pay the victim, the Los Angeles Housing Authority, $58,960 in restitution "joint[ly] and several[ly]." (*People v. Young* (1995) 38 Cal.App.4th 560, 565-567.)

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

10

**DISPOSITION**

The judgments are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

11