Filed 8/30/24  P. v. John CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C098524 |
| Plaintiff and Respondent, | (Super. Ct. No. P20CRF0069) |
| v. | |
| LUCAS ANTHONY JOHN, | |
| Defendant and Appellant. | |

Defendant Lucas Anthony John appeals the trial court's revocation of his probation and lifting of the suspension of execution on his previously imposed aggregate 13-year prison sentence.  John challenges the sufficiency of the evidence supporting some, but not all, of his probation violations.  He also argues the suspended sentence had not actually been imposed by the Orange County Superior Court and that the El Dorado County Superior Court judge sentencing him misunderstood her sentencing discretion. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, a jury convicted John in Orange County case No. 17NF3607 of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a))[1] in which nonaccomplices were present (§ 667.5, subd. (c)(21)) (the burglary case). He later admitted he had suffered a prison prior (§ 667.5, subd. (b)), a prior serious felony conviction (§ 667, subd. (a)(1)), and a prior strike (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)) in this same case.

On September 27, 2019, the trial court sentenced John to an aggregate prison term of 13 years in the burglary case, comprised of the midterm of four years, doubled to eight years because of the prior strike, plus five years for the prior serious felony conviction. The court struck the prison prior and suspended execution of John's sentence, placing him on five years' felony probation under specified terms and conditions, including following the directives of his probation officer and obeying the law.

In January 2020, the burglary case was transferred to El Dorado County.

On June 11, 2021, the El Dorado County District Attorney filed a probation revocation petition (the June 11 petition) alleging John violated the probation condition that he obey all laws by committing violations of Business and Professions Code sections 7028, subdivision (a) and 7027.1 subdivision (a) on February 12, 2020.

Later, the El Dorado County Probation Department filed a probation revocation petition alleging new violations, which was amended on November 17, 2022, (the November 17 petition) to allege five violations of probation. Specifically: (1) John violated his probation by failing to obey all laws by committing assault with a deadly weapon (§ 245, subd. (a)(1); violation I); (2) John failed to report to the probation officer as directed (violation II); (3) John absconded and his whereabouts were unknown

---

[1]     Undesignated statutory references are to the Penal Code.

(violation III); (4) John committed battery on a spouse (§ 243, subd. (e)(1)) and was placed on diversion after conditionally pleading no contest to violating that section, as well as section 415, subdivision (a) (violation IV); and (5) John left the state of California without permission (violation V).

A contested probation violation hearing took place on March 10, 2023, to resolve the allegations of the June 11 petition and the November 17 petition. At the outset, the court took judicial notice that John's terms of probation included "that he was ordered to obey all laws" and that "[i]n addition, he was required to report to Probation as ordered as well as notify them of his current residence and whereabouts."

As relevant to the June 11 petition, the People presented the testimony of Bryce Allwardt, a special investigator on the statewide fraud team for the Department of Consumer Affairs Contractors State License Board. Allwardt participated in a sting operation on February 12, 2020, looking for people bidding or doing work without a license. Specifically, Allwardt "obtained some information alleging that Mr. John was advertising to perform some seal coating type of work" and got his phone number from the Nextdoor application. Allwardt called John, confirmed he did seal coating work, and made an appointment with John to bid the project. Allwardt then met John at the sting address where John provided a business card that failed to identify whether he was a licensed contractor as required by law. Allwardt told John he wanted the entire driveway seal coated, and John offered to complete the work for $800. John's identity was later confirmed with his driver's license, and Allwardt confirmed that John was the person he had met with.[2] According to Allwardt, seal coating work must be done by a licensed

---

[2] On cross-examination, Allwardt said he was between 90 and 95 percent certain John was the person he had met with. However, after refreshing his recollection on redirect by looking at John's CalPhoto from his report, Allwardt unequivocally identified John.

3

contractor if the work performed costs more than $500. A search of the Contractors State License Board database reflected that John had never been granted a license within the State of California.

As to the November 17 petition, the People withdrew alleged violations I and V. The People then presented the testimony of Stephanie Clark, John's probation officer in El Dorado County, who had been supervising him in the high risk unit since March 2020. On April 26, 2022, John was arrested in Los Angeles County; he was released the same day and called Clark to explain what had happened. Clark directed John to report to probation on April 29 at 2:00 p.m., but John failed to appear or call Clark to explain his absence. John also stopped using the "SCRAM touch point" application to check in daily with his GPS location, and his whereabouts were unknown until he was arrested. Prior to April 2022, he had been compliant with probation, aside from concerns surrounding his frequent moves in and out of the county.

Finally, the People presented exhibit No. 1, a minute order from the Los Angeles County Superior Court that the People represented as showing that on "October 31st of 2022, Mr. John entered a plea to a violation of Penal Code section 415, which was amended from the original charge of a 243(e)(1)." John's attorney had no objection to the admission of this exhibit, and the trial court admitted it after noting "it looks like a three-page minute order from L.A. County. It's in Case 2GD00756." People's exhibit No. 1 is not part of the record in this appeal.

John's counsel argued he was on probation with a suspended sentence, but should be allowed to continue on probation with some local time due to the de minimis nature of his violations. The People opposed this request, arguing the Business and Professions Code violations were of the same character of conduct that had led to his conviction in the burglary case and that the trial court should revoke probation and lift the suspension on John's 13-year sentence. Clark then relayed without objection that John reported conflicting marital and relationship status information to the probation officer preparing

the presentencing report as compared with information provided to his supervising probation officer.

Following a recess to consider the evidence, the trial court found John violated his probation as alleged in the June 11 petition and that the People had also established the remaining three allegations from the November 17 petition. As to the violation supported by exhibit No. 1, the trial court found John "failed to obey all laws pursuant to the plea that was entered in Los Angeles County Case Number 2GD00756. It appears that the plea was entered on October 31st, 2022, and it was entered as to two separate Counts. One, a misdemeanor violation of Penal Code Section 243(e)(1) and then also Penal Code Section 415(1)." John did not object.

Moving on to sentencing, the trial court noted the suspended 13-year prison sentence imposed by the Orange County Superior Court, as well as the timing of John's various violations of probation, ultimately concluding that because Orange County Superior Court had suspended the execution of the prison sentence it imposed, the court could not modify that sentence upon revocation. Accordingly, the court lifted the suspension, allowing John's prison sentence to go into effect.

John timely appealed.

## DISCUSSION

### A. *The Revocation of John's Probation*

John challenges the sufficiency of the evidence supporting the trial court's determination that he violated his probation by violating two sections of the Business and Professions Code, as well as two sections of the Penal Code. John's briefing fails to acknowledge that he was also found to have violated his probation for not reporting to probation as directed and by absconding on April 29, 2022. Putting aside the issue of prejudice in light of this failure, we conclude John has failed to demonstrate error.

5

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. (See *People v. Rodriguez* (1990) 51 Cal.3d 437, 447 (*Rodriguez*).) ' "When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. (*Rodriguez, supra*, 51 Cal.3d at p. 447; [citation].) 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772, fn. omitted (*Urke*).)

We review the trial court's revocation of probation for an abuse of discretion, while factual findings made by the trial court when revoking probation are reviewed for substantial evidence. (*Urke, supra*, 197 Cal.App.4th at p. 773.) "[G]reat deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.' " (*Ibid*.)

" 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] . . . [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . . ." ' ([*People v. ]Rodriguez, supra*, 51 Cal.3d at p. 443.)" (*Urke, supra*, 197 Cal.App.4th at p. 773.) The defendant maintains the burden of showing the trial court abused its discretion. (*Ibid.*)

Here, John challenges whether the testimony of Allwardt established the Business and Professions Code violations. We begin by highlighting that John's failure to raise any evidentiary objections to Allwardt's testimony has forfeited any such issues on

6

appeal. (Evid. Code, § 353, subd. (a); *People v. Booker* (2011) 51 Cal.4th 141, 170.) Accordingly, it was incumbent upon John to show Allwardt's testimony as a whole did not establish violations of Business and Professions Code sections 7028 and 7027.1. (*Urke, supra*, 197 Cal.App.4th at p. 773.) He has not done so.

Business and Professions Code section 7027.1 proscribes advertising "for construction or work of improvement . . . unless that person holds a valid license." (Bus. & Prof. Code, § 7027.1, subd. (a).) Included within the definition of advertising is the issuance of a business card. (*Id.*, subd. (b).) Further, Business and Professions Code section 7028 prohibits an individual from engaging in business as a contractor without a license. (Bus. & Prof. Code, § 7028.) Contractors include individuals who submit a bid on a project to improve "any . . . road, parking facility . . . or other structure" (Bus. & Prof. Code, § 7026), as well as individuals who submit bids for any "home improvement project." (Bus. & Prof. Code, § 7026.1.) Notwithstanding these provisions, an individual may advertise for improvement work under this chapter provided the aggregate cost of the project is less than $500. (Bus. & Prof. Code, § 7027.2.)

Thus, Allwardt's testimony that John bid $800 to perform the seal coating improvement project for the sting house driveway, that seal coating work in excess of $500 required a license, and that John did not have any license and provided a business card is substantial evidence supporting the trial court's determination that John violated his probation condition that he obey all laws by violating Business and Professions Code sections 7027.1 and 7028.[3]

---

[3] John's challenge to Allwardt's identification of John at trial ignores that Allwardt was 90 to 95 percent certain John was the individual who had made the bid at the sting house and that Allwardt later removed any qualification on his identification of John. A probation violation need only be established by a preponderance of the evidence. (*People v. Rodriguez, supra*, 51 Cal.3d at p. 447.)

John also challenges the sufficiency of the evidence that he violated sections 415 and 243, subdivision (e)(1).  The trial court's findings that John violated his probation condition that he obey the law by violating these provisions of the Penal Code were supported by a minute order that is not part of the record on appeal, but which was admitted into evidence without objection.  While the People's description of this minute order only reflects a no contest plea to the section 415 violation, the trial court described this document as reflecting pleas to violations "of Penal Code Section 243(e)(1) and then also Penal Code Section 415(1)."  Having not produced the document on appeal to show it reflects otherwise, we find these descriptions of the minute order constitute substantial evidence that John did plead no contest to violating both provisions of the Penal Code in contravention of the requirement that he obey the law.

### B.     The Lifting of the Suspension on John's Sentence

Finally, John challenges his sentence, arguing the Orange County Superior Court never actually imposed the 13-year prison sentence and that the El Dorado County Superior Court judge sentencing him misunderstood her sentencing discretion.  We disagree.

The record of the Orange County Superior Court's sentence is important in this regard.  The trial court indicates the following:  "I'll select the midterm on Count 1 and with the 667(d) prior, the strike prior, that would be — the midterm would be eight years, which is the midterm of four years doubled.  So it will be eight years, which is the midterm on Count 1, plus the five-year prior 667(a), for a total of 13 years.  [¶]  I'll strike the 667(b) prior and execution of that sentence is suspended and I'll place you on five years of supervised probation with the following terms:  [¶] . . . [¶] And you understand, sir, that is the sentence, the 13 years in State Prison.  You were on parole when this occurred.  You have a serious felony prior.  You have numerous priors.  So I'm giving you a shot to stay out of prison by placing you on probation, by suspending the execution of

that sentence. But should you violate the terms of that probation, you are already sentenced to 13 years in prison. So if you come back here with a violation, I'm just going to go ahead and impose that execution I suspended."

Given the state of the record, that the Orange County Superior Court did not use the word "impose" in meting out its sentence is of no consequence. The Orange County Superior Court unequivocally imposed the 13-year aggregate prison sentence prior to suspending execution of that sentence and placing John on five years' formal probation. The El Dorado County Superior Court judge recognized this, stating, "And the language was specific, it was that the court actually sentenced Mr. John to 13 years in state prison and it was only the execution of that sentence that was suspended. . . . [I]t wasn't imposition of sentence was stayed pending successful completion of probation. It was the sentence was imposed and only the execution is suspended." That John was subject to the suspended prison sentence was also acknowledged by his counsel at the probation revocation hearing, wherein he requested local prison time with continued supervision rather than finding his violations worthy of a prison sentence.

Moreover, John has failed to show the El Dorado County Superior Court judge misunderstood the scope of her sentencing discretion at the probation revocation hearing. Rather, the judge correctly stated she could not modify the suspended sentence once she rendered a decision to revoke John's probation. (See *People v. Martinez* (2015) 240 Cal.App.4th 1006, 1017 ["when, as here, a lawful sentence is imposed but execution thereof is suspended and the defendant is placed on probation, *the exact sentence* must be ordered executed if probation is subsequently revoked"].) Thus, because the court found John had not complied with probation and elected to revoke the probation grant, the trial court acted in accordance with the law when it lifted the suspension of execution on John's 13-year prison sentence. (*Ibid.*; see also *id.* at p. 1012 ["The trial court is without jurisdiction to modify or change a final judgment and is required to order into execution that judgment after revocation of probation"].)

9

At oral argument, John relied on *People v. Howard* (1997) 16 Cal.4th 1081 to argue that the trial court had discretion to reinstate probation, thereby providing an avenue for imposition of a custodial sentence lower than the previously suspended sentence of 13 years in prison. We agree that the trial court retained the discretion to reinstate probation and modify the conditions thereof accordingly, including imposing a condition of confinement other than a prison term.

"A probation violation does not automatically call for revocation of probation and imprisonment. (*People v. Hawthorne* (1991) 226 Cal.App.3d 789, 795.) A court may modify, revoke, or terminate the defendant's probation upon finding the defendant has violated probation. (§ 1203.2, subds. (a), (b)(1).) The power to modify probation necessarily includes the power to reinstate probation. (*People v. Medina* (2001) 89 Cal.App.4th 318, 321; *Hawthorne, supra*, 226 Cal.App.3d at p. 795.)" (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420.)

However, this is not the end of our inquiry. If, as happened here, the trial court decides to terminate probation and declines to reinstate it, the sentence on termination is determined by examining the manner in which the court *originally* sentenced the defendant. "If the court originally suspended *imposition* of sentence, the court may, upon revocation and termination of probation, 'pronounce judgment for any time within the longest period for which the person might have been sentenced.' (§ 1203.2, subd. (c).) But if the court originally imposed a sentence and suspended *execution* of it, upon revocation and termination of probation, the court must order that imposed sentence into effect. (*People v. Howard*[*, supra*, 16 Cal.4th at pp.] 1088, 1095.) The court ordinarily has no authority to impose a lesser sentence in such a case. (*Howard, supra*, at p. 1095.)" (*People v. Bolian, supra*, 231 Cal.App.4th at pp. 1420-1421, fn. omitted.)

John further argued that the record in this case reflects the trial court's misunderstanding of this distinction, and therefore a misunderstanding of its discretion. John fails to persuade. At the sentencing hearing on the violation of probation, trial

10

counsel asked the court to exercise its discretion to "not view this as a prison violation," and reminded the trial court that "The court does have the discretion to not sentence Mr. John to prison, to sentence Mr. John to local time." The prosecutor, in urging the trial court to execute the suspended sentence, focused on John's prior criminal history and his poor performance on probation. The prosecution also reminded the trial court of its discretion to reinstate probation, thereby fashioning a new sentence that did not include the 13-year prison term; "So I think that his conduct in and of itself shows that he is not amenable to another chance on probation and I believe the Court has enough evidence to find him in violation of the multiple allegations." Although the prosecutor continued by telling the court that "at that point in time, the only legal option is to impose or execute that suspended 13-year prison sentence," the previous statement regarding John's amenability to continued probation assumed the court could choose that as an option but that if it instead chose not to reinstate probation, there was only one sentencing option. The trial court then proceeded to find John in violation of probation, revoke probation, and execute the original, stayed sentence. In doing so the trial court stated: "[G]etting back to the original sentence that was imposed by the Orange County court. And the language was specific, it was that the court actually sentenced Mr. John to 13 years in state prison and it was only the execution of that sentence that was suspended." "Again, that is important language because this Court, pursuant to the finding in case law, one that I was able to find on such short notice was *People v. Colorado* [*sic*]. It's a 1995 case at 32 Cal.App.4th 260. In that case, along with multiple others, is that once an individual is found in violation of their probation and probation is revoked, the Court has no other option, but to lift the execution — or excuse me — to immediately execute that sentence that has been suspended. This Court is without the ability to modify, which means this Court also cannot impose a greater sentence on Mr. John. Instead, this Court is bound by the sentence that has been imposed and only its execution has been stayed pending successful completion of his probation."

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530, fn. 13; *People v. Myers* (1983) 148 Cal.App.3d 699, 704.) Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) [¶] Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion. (*People v. Belmontes, supra*, 34 Cal.3d at p. 348, fn. 8; *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.) Further, remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record. (*People v. White Eagle, supra*, 48 Cal.App.4th at p. 1523.)" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228-1229.)

Here, the record discloses that the litigants actively discussed the trial court's discretion to reinstate probation, but argued against it with the exception of the defense attorney, who asked for "local time" — an option only available with continued probation. Thus, the trial court was reminded that it had the option of reinstating probation and fashioning a new sentence, including "local time." But if it chose not to do so, and declined to reinstate probation, the court was required to impose the very sentence that had been previously suspended. We presume the trial court was aware of and followed the applicable law. " '[A] trial court is presumed to have been aware of and followed the applicable law' " (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517), and John has failed to convince us that the trial court's comments in isolation signal otherwise.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
DUARTE, J.

_____/s/_____
KRAUSE, J.